JOSEPH GIAMMARES and TONY CAFFARO

*v.*

ALLEMANIA FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, and JAMES A. EDGAR.

[Decided November 21st, 1918.]

1. A suit in equity to reform a contract of insurance or to enjoin an insurance company from setting up certain defences, in aid of an action at law, is not an action within the meaning of the provisions of the policy providing a short period of limitation.

2. Delay of upwards of a year before instituting an action to reform the policy, &c., unaccompanied with injury to the insurance company is not such laches as to warrant withholding relief.

3. Where a policy of insurance issued by an agent having knowledge, communicated to him by the insured, that the building stands on leased ground and that the property is encumbered by a chattel mortgage, does not contain notations to such effect, the company is estopped from setting up in an action at law that the policy is void under a provision that it shall be void if the building stands on ground not owned by the insured, or if the interest of the insured is other than unconditional ownership.

4. Failure of the insured to read the policy and thus discover the omissions is not such negligence as will bar relief.

In bill, &c.

*Mr. George J. Plechner* and *Mr. Freeman Woodbridge,* for the complainants.

*Mr. I. Benjamin Glueckfield,* for the defendants.

LANE, V. C.

The facts, as I have found them, are as follows: Complainant Caffaro was the owner of a building standing on leased land. He applied for insurance through a broker to the agent of defendant insurance company; the agent was informed that the building stood on leased ground; the company issued its policy without a notation to that effect. The policy was delivered by the agent to the broker and by the broker to Caffaro, neither of whom read it. Subsequently, Caffaro sold the building and contents to Giammares. As part of the consideration, Giammares gave Caffaro a chattel mortgage. The policy was sent to the agent, through the broker, for a notation, to the effect that Giammares was the owner and for the addition of a clause protecting the chattel mortgagee. The fact that there was a chattel mortgage was brought to the attention of the agent. He returned the policy with a notation with respect to the change of ownership, but without the chattel mortgagee clause and without a notation to the effect that there was a chattel mortgage, to the broker, who in turn delivered it to Caffaro. Neither the broker, Caffaro or Giammares read the policy. Caffaro and Giammares cannot read English. The broker can. A fire occurred and an action at law was instituted a few days before the expiration of the period of limitation, in which action the insurance company set up the defence that the policy was void because the building stood on leased ground and there was a chattel mortgage on the building and contents, which facts rendered the policy void under provisions thereof that it should be void if the interest of the insured was other than unconditional ownership, or if the building stood upon ground not owned by the insured. After the expiration of the period of limitation fixed by the policy, this suit was instituted to reform the policy, or in the alternative, for an injunction enjoining defendant from setting up the defence referred to upon the ground of estoppel *in pais.* Neither the broker, Caffaro nor Giammares had notice of the omissions in the policy until after the fire.

The defendant insurance company first contends that the suit is barred by the limitation of one year prescribed by the policy. I think not. *Rosenbaum Brothers* v. *Council Bluffs Insurance Co.* (*United States Circuit Court for the Northern District of Iowa, Judge Shiras*), *3 L. R. A. 189;* *Abraham* v. *North German Fire Insurance Co.* (same court; same judge), *3 L. R. A. 188.* And see note to *Harrison* v. *Hartford Fire Insurance Co., 47 L. R. A. 711.* A consideration of *Kelsey* v. *Agricultural Insurance Co., 78 N. J. Eq. 378,* and *Kupferschmidt* v. *Agricultural Insurance Co., 80 N. J. Law 441,* will indicate that the suit to reform the policy in that case was brought after the expiration of the period of limitation fixed by the policy.

The defendant insists, second, that irrespective of the provisions of the policy the complainants are guilty of laches. The policy in question was issued January 8th, 1917; the fire occurred March 25th, 1917; a suit was commenced in the supreme court March 22d, 1918; this suit was commenced on May 31st, 1918. Generally, mere delay will not be sufficient to warrant withholding relief. The delay must be injurious to defendant. I cannot see that in this case defendant has been injured. *Kelsey* v. *Agricultural Insurance Co., supra.*

The defendant insists, third, that the contract of insurance being evidenced by a written document, and the policy containing a provision that its terms cannot be changed, or altered, except by a written notation, the court cannot either reform the contract or apply the doctrine of estoppel *in pais.* While the precise question has not been settled by the courts of this state, yet I think there is authority clearly indicating how it should be determined. In *Franklin Fire Insurance Co.* v. *Martin, 40 N. J. Law 568,* the court of errors and appeals, speaking through Mr. Justice Depue, said: "If the proposal for insurance be prepared by the agent of the company, and he misdescribe the premises, with full knowledge of their actual condition, and there be no fraud or collusion between the agent and the insured, the contract of insurance may be reformed in equity, and made to conform to the condition of the premises as they were known to the agent." In *Lloyd* v. *Hulick, 69 N. J. Eq. 784,* the court of errors and appeals, speaking through the present chief-justice,

held that a deed might be reformed where it did not conform to the provisions of a written contract. In *Sloss-Sheffield Steel and Iron Co.* v. *Aetna Life Insurance Co., 74 N. J. Eq. 635,* Vice-Chancellor Howell said that contracts *inter partes* may be reformed by this court whenever by reason of a mutual mistake the written instrument fails to express the agreement on which the minds of the parties met, or where there is a mistake by one of the parties and fraud or other inequity attempted on the part of the other. This case was reversed by the court of errors and appeals in *75 N. J. Eq. 545,* but only on the question of fact. In *Seymour* v. *German-American Insurance Co., 83 N. J. Eq. 37,* it appeared that the insurance policy contained a provision stamped with a hand stamp "Warranted by the assured that the within described building is occupied exclusively for dwellings above the first or grade floor." The policy had been issued as a renewal of a policy which described the premises as insured "while occupied as a dwelling and for manufacturing of oil stones." The defendant's agent transmitted the policy to complainant, who, failing to notice the stamped words, paid the premium and placed the paper in his safe, supposing it to conform in all respects to the one that had preceded it. The court (Vice-Chancellor Stevens) permitted reformation. The case was affirmed in the court of errors and appeals on the opinion below. *84 N. J. Eq. 206.* In *Koch* v. *Commonwealth Insurance Co. of New York, 87 N. J. Eq. 90,* Vice-Chancellor Leaming did not doubt but that if the insurance company had knowledge that the insured property actually was used as a printing office it would have been proper to have decreed reformation. In *Martin* v. *Jersey City Insurance Co., 44 N. J. Law 273,* the supreme court held that knowledge by the president of an insurance company who had exercised the power of making and renewing contracts of insurance that the insured was making additions to the insured buildings with an oral permission to do so, estops the company from defending an action brought upon the policy upon the ground that by reason of such additions there had been an increase of risk; and further, that knowledge by the company of the existence of subsequent insurance, followed by any words or acts on the part of the company by which the insured is induced or permitted to believe that

the contract of insurance is still subsisting, and the property of the insured is still protected, is a waiver of the condition or an estoppel against an assertion that a forfeiture of the policy has occurred because of a failure of the insured to comply with the condition to give notice of such subsequent insurance and have it endorsed upon the policy or acknowledged in writing.

I have not overlooked the cases of *Dewees* v. *Manhattan Insurance Co., 35 N. J. Law 366; Bennett* v. *St. Paul Fire and Marine Insurance Co., 55 N. J. Law 377; Dimick* v. *Metropolitan Life Insurance Co., 69 N. J. Law 384; Kupferschmidt* v. *Agricultural Insurance Co., 80 N. J. Law 441.* These were all actions at law, and I do not think that their effect is to modify the general rule that permits a court of equity to reform a contract or to apply the doctrine of estoppel *in pais* where there has been either a mutual mistake or a mistake on one part and fraud or other inequitable conduct on the other.

It is impossible to reconcile the cases from other jurisdictions. See the note to *Bostwick* v. *Mutual L. Ins. Co., 116 Wis. 392; 67 L. R. A. 705,* particularly section 1; section 3, subdivision b, subsection 1; section 4, subdivision a, subsection 1; subdivision C, subsection 3; subdivision a, subdivision b, subdivision C, section 9. Although the supreme court of the United States in a life insurance case (*New York Life Insurance Co.* v. *Fletcher, 117 U. S. 519; 29 L. Ed. 934*) held where both the assured and the insurer are deceived by fraudulent acts of an agent in inserting in the application false answers, where the assured answered truthfully, if both parties acted *bona fide,* the policy should be canceled and the premiums returned, and that a party insured is presumed to have read his application and to be cognizant of the limitations therein expressed, and that a retention of the policy containing a copy of the application was an approval of the application by the assured, yet the same court, in *Continental Life Insurance Co.* v. *Chamberlain, 132 U. S. 304; 133 L. Ed. 341,* after considering the *Fletcher Case,* held that where the insured stated to an agent the exact facts with respect to other insurance, and the agent then wrote "no other," although in fact there was other, the insurance company is estopped from denying the interpretation put upon the facts by the agent. In *Glens*

*Falls Insurance Co.* v. *Michael* (*Indiana Supreme Court*), *74 N. E. Rep. 964; 8 L. R. A.* (*N. S.*) *708,* the court held that the issuance without written application to a life tenant of a fire insurance policy without inquiry as to the state of title, no representations being made by assured upon that question, and the assured paying the premium and accepting the policy without notice of a provision in the policy that it shall be void if the interest of the assured be other than unconditional and sole ownership, is a waiver of such provision. So, the supreme court of Arkansas, in *Great Southern Fire Insurance Co.* v. *Burns, 175 S. W. Rep. 1101; L. R. A. 1916B, 1252,* held that an insurer issuing a standard policy upon a parol application in which no reference is made to encumbrances upon the property waives a provision printed on the back of the policy making it void if the property is encumbered by a chattel mortgage. The court in the latter case said: "The effect of a directed verdict would have been to hold that the contract of insurance was void from the beginning, and that the policies never in fact had any force or validity because of the anti-mortgage provisions inserted therein by the insurance company without the knowledge of the insured. If that view should be adopted, the insurance company would not only have wrongfully received and accepted the premium from the assured, but would have also misled them into the belief that their property was insured when in fact it was not." It seems to me when a person applies to the agent of an insurance company, authorized to act, and informs the agent with respect to the facts that the insured may upon receipt of a policy assume that the policy is a valid and binding obligation on the part of the insurance company. As Vice-Chancellor Stevens said, in *Seymour* v. *German-American Insurance Co.,* with respect to the situation presented before him, if the contention of the insurance company be sound, it issued the policy and took the premium when the policy was void *ad initio* to its knowledge. Either the agent of the insurance company mistakedly omitted to place on the policy a notation to the effect that the building stood on leased ground and subsequently a notation to the effect that there was a chattel mortgage, or in issuing the policy intentionally omitted the notations, in which event he committed a fraud upon the insured for

30

which the company is responsible. It is no answer to say with respect to the notation in reference to the chattel mortgage that no additional premium was received. The defendant company by its act led the insured to believe that his property was still covered by insurance:

The principles enunciated in such cases as *Dimick* v. *Metropolitan Life Insurance Co., 69 N. J. Law 384,* and *Insurance Co.* v. *Fletcher, 117 U. S. 519,* are not at all applicable in the case at bar. In such cases involving life insurance the contract consists of the written proposal, written representations by the insured and the policy. In fire insurance generally, as in this case, there is no written proposal, the oral request, including statements and representations by the insured, takes its place. The contract is not reduced to writing by the parties. The policy is a unilateral affair, prepared by the company with a view primarily of protecting its interests, and this is so, so far as the written as distinguished from the printed portion of the policy is concerned, notwithstanding that the form is standard. Its acceptance and retention by the insured does not have the same effect, at least in equity, as the written representations of the insured in a life policy accepted by the company forming a part of the contract. In considering the matter of the responsibility for written answers in a proposal for life insurance, the questions for whom the scribner is agent, and the duty of the insured before signing, to see to it that the answers are properly transcribed, as well as questions arising under the law with respect to warranties are involved. No such questions are involved in a case like this. The agent who received the oral request and representations, who issued the policy, did so in each instance as the agent of the company. He did not act as agent for the insured for an instant. The company alone is responsible for his acts. His knowledge and fraud are imputed to the company. It may be that in a life case the knowledge and fraud of the agent may be imputed to either the insured or insurer as he may act as agent for either. And this is the reason underlying the first head note in *Insurance Co.* v. *Fletcher.* In *Continental Insurance Co.* v. *Chamberlain, 132 U. S. 304,* the supreme court of the United States held that in interpreting the meaning of the

term "other insurance" the agent acted as the agent of the insurer alone and the company was bound by his interpretation. I think the insured in a life case may safely assume that the policy issued by the company is in accord with the written pro posal. So the insured in a fire case may safely assume that a policy issued is in accord, so far as the description of the property and the insured interests therein are concerned, with the oral request; he may safely assume that the policy is not, to the knowledge of the insurer, void *ab initio*.

The defendant insists, fourth, that because of the failure of the insured or his broker to read the policy, there can be no relief. Here again there is a wide divergence of opinion in foreign jurisdictions. Some have followed the rule adopted by the Wisconsin supreme court in *Bostwick* v. *Mutual L. Ins. Co., 116 Wis. 392; 67 L. R. A. 705,* which is to the effect that the principles of *caveat emptor* apply to the sale of an insurance policy with as much rigidity as in the case of a sale of merchandise. Others have adopted a contrary rule. *67 L. R. A. 727 et seq.;* see note to *Dolvin* v. *American Harrow Co., 28 L. R. (N. S.) 882 et seq.*

I think the rule to be applied in this state is to be gathered from a consideration of the following cases: *Lloyd* v. *Hulick, 69 N. J. Eq. 786,* in which the chief-justice said: "Its (that is, the deed) delivery by the defendants to the complainants without a disclosure of the fact that it contained these covenants was equivalent, it seems to me, to a declaration on their part that the deed was drawn in conformity to the provisions of the contract. It is true that the complainants might readily have discovered, by an examination of the deed before accepting it, that it was not what they had bargained for, and it may be conceded that prudence upon their part required a scrutiny of the deed before its acceptance by them. But I am not able to perceive that their failure to discover the fraud disentitles them to relief. In the transaction of business men ordinarily deal with one another in the belief that each is honest." *Seymour* v. *German-American Insurance Co., supra,* in which Vice-Chancellor Stevens said: "The facts appear to me to show mutual mistake—mistake by the company's agent in stamping the objectionable matter on the

printed policy—and mistake by the complainant, who supposed that the policy was like the one which had immediately preceded it and who was guilty of no more carelessness than Lloyd when he took his deed from Hulick under the supposition that it conformed to the prior written contract." See also the cases of *Kelsey* v. *Agricultural Insurance Co., 78 N. J. Eq. 378,* and *Koch* v. *Commonwealth Insurance Co. of New York, supra.*

The complainants, Caffaro and Giammares, could not read English. The delivery of the policy following the oral application was a representation that the policy conformed to the facts stated in the oral application.

I am of the opinion that the defendant insurance company is estopped from setting up in the action at law that the policy is void either because the building stood upon leased ground or because of the existence of the chattel mortgage.

It may be a different question as to whether the policy should be reformed so as to express an agreement on the part of the insurance company to pay to the chattel mortgagee the amount of his loss. The insurance company never intended to make any such contract. The testimony is to the effect that the agent was forbidden by the company to make such a contract. I desire to be informed by counsel whether the equities between the parties cannot be worked out without a finding as to whether the policy can be reformed as above indicated. I wish counsel for complainants would notify me at once whether they consider it necessary that the policy be reformed by writing in the chattel mortgage clause.