UNION FUR SHOP, INC., complainant-appellant,

*v.*

MAX MELZER, INC., defendant-respondent.

[Submitted October term, 1942. Decided January 22d, 1943.]

*Messrs. ·Goldstein & Goldstein (Mr. Fred Goldstein,* of counsel), for the appellant.

*Messrs. Solomon & Solomon (Mr. Leo Solomon,* of counsel), for the respondent.

The opinion of the court was delivered by

.HEHER, J.

The learned Vice-Chancellor found it to have been the common intention of the parties to the original sale to convey the good will of the business sold and the trade name "Union Fur Shop," absolutely and unconditionally, without limitation of use to the premises wherein the business had theretofore been conducted, as appellant conceives is the restriction of paragraph 6 of the bill of sale; and this finding of fact is sustained by evidence that is clear and convincing.

The primary asset bargained for was the good will and trade name. A trade name is a property right. The sale of the good will of the business, without more, is inclusive of the trade name. In this instance it was sold and conveyed by the granting clause of the bill of sale, and not made the subject of a mere use privilege or license for a limited time. It was certainly not within the contemplation of the parties that at the expiration of the term of the lease for the premises in question, respondent would forfeit the good will associated with its conduct of the business there under the trade name. The fact that the principal stockholder of the vendor was also the principal stockholder of the corporation which had title to the lands is of no significance in this regard. The understanding was that the corporate vendor would retire from the fur business, and dissolve. This was in fact done. We are satisfied that the parties did not intend to impose the restriction now found by appellant in the language of paragraph 6.

We do not, however, entertain the view that the parol evidence adduced by respondent establishes that the design of this paragraph of the contract was "merely to protect the purchasers in their contemplated use of the name during the time that the complainant corporation was being dissolved," and therefore the operation of the instrument should be "controlled" to preclude an unconscionable advantage to appellant.

The introduction of parol evidence for this purpose is of particular application to negotiable instruments, since there

is a practical reason why the parties to paper of this class should not incorporate contemporaneous oral agreements therein. Ordinarily, this course would render the paper non-negotiable. *Williston on Contracts (Rev. ed.) § 644. Vide O'Brien* v. *Paterson Brewing and Malting Co., 69 N. J. Eq. 117.* Yet the rule is of broader scope. A deed of conveyance absolute on its face may in equity be shown to be a mere security, and treated as such. And parol evidence is admissible to prove that the writing has not become effective as a contract, or that the assent has been induced by fraud, mistake or duress. It is the general rule that a parol condition deferring the effect of a sealed instrument is inadmissible, but that lack of the intent essential to delivery may be shown. *O'Brien* v. *Paterson Brewing and Malting Co., supra; Oak Ridge Co.* v. *Toole, 82 N. J. Eq. 541.* There is a substantial difference in this regard between parol evidence elicited to demonstrate that the instrument does not express the true intention of the parties and that educed to reveal circumstances making it unconscionable and inequitable to effectuate the common intention. *Stoutenburgh* v. *Tompkins, 9 N. J. Eq. 332.* In the latter event, the language is not thereby varied by parol. "Oral evidence is admissible to reform a written instrument, or to subvert or overthrow it entirely, but not to vary or alter it." *Van Syckel* v. *Dalrymple, 32 N. J. Eq. 233.*

And it is also a settled canon of interpretation, designed to fulfill the intention of the parties, that where clauses of a contract are repugnant to each other, the general is restrained by the particular manifestation of intention. *Bullowa* v. *Thermoid Co., 114 N. J. Law 205.*

But here, by appropriate averments and prayers in the answer and the counter-claim, respondent sought a reformation of the bill of sale to express the intention of the parties as found by the Vice-Chancellor; and so it may have relief in that form. The proof of mistake in the expression of the common intention is of the requisite quality. It meets the standard of conviction which moves the conscience of the Chancellor to a decree of reformation.

Parol evidence was admissible to establish and rectify a

mistake of this character, and thus to subserve the plainest requirements of justice. The writing may be reformed to accord with the contract that was in fact made but erroneously expressed. *Motley* v. *Darling, 91 N. J. Eq. 76.* Parol evidence of a material mistake of expression may be offered defensively. And the equitable remedy of specific performance of contracts is governed by equitable considerations; and it may be withheld where the evidence reveals that, through mutual or unilateral mistake, the writing does not give expression to the common intention. It will not be awarded to compel performance of a contract which the defendant did not intend to make, or which he would not have entered into had its true effect been understood. A mistake of law may be such as to defeat enforcement. *Williams* v. *M. E. Blatt Co., 95 N. J. Eq. 326; Kennerly* v. *Aleck, 86 N. J. Eq. 336.* See, also, *Pom. Eq. Jur. (5th ed.)* § *860.*

And, since there is no countervailing equity, respondent is entitled to execution of the contract as thus varied by parol to represent the true agreement. This may be done upon the mere allegations of the answer, without a cross-bill. *Pom. Eq. Jur.* § *860a.* We have not here a case of a party's inadvertent omission to propose an intended provision or stipulation. *Vide Parker v. Taswell, 2 De Gex & J. 559.*

The remedy of reformation is not limited to the original parties to the contract. It extends as well to all those standing in privity with them. *Motley* v. *Darling, supra; Story Eq. Jur. (11th ed.)* § *165.* And there would seem to be no reason in principle why the ultimate vendee here, even though its title comes by mesne conveyances, should not have this remedy to correct the original conveyance. There is no intervening superior equity or interest which precludes such relief. The remedy has been made available to the owner of real property whose title is derived by mesne conveyances from the deed in which the mistake originated. *Vanderbeck* v. *Perry, 28 N. J. Eq. 367; Butler* v. *Barnes, 60 Conn. 170; 21 Atl. Rep. 419; 53 C. J. 977; Williston on Contracts (Rev. ed.)* § *1547.*

The due administration of justice sanctions the award of the remedy of reformation in the circumstances here pre-

sented. Its refusal would secure to appellant an unconscionable advantage, and, where no intervenient interests stand in the way, the correction of the injustice is a sufficient ground for equitable interference. To deny that relief would be a reproach to the law. In such a situation, the right of reformation is not purely personal to the original vendee or his immediate assignee. Appellant's attempt to take advantage of the mistake to the detriment of the respondent assignee is fraud in the contemplation of equity; and this doctrine applies to the successors in interest of the original vendee who would be thereby injured. Respondent has a substantial interest to protect; it is not a mere volunteer.

Let the decree be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 14.

*For reversal*—None.